UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRENT ROTHENBERG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, et al., <br><br> Defendants. | Case No. 23-cv-01603-JST <br><br> **ORDER GRANTING MOTION FOR A DEFAULT JUDGMENT SANCTION** <br><br> Re: ECF No. 70 |

Before the Court is Counterclaimant Federal Deposit Insurance Corporation's motion for terminating sanctions against Counterclaim Defendant Michael B. Rothenberg. Rothenberg has engaged in an extraordinarily comprehensive course of willful noncompliance with litigation rules and court orders, doggedly obstructing this litigation for more than four long years. The Court will grant the motion.

**I.      BACKGROUND**

Rothenberg founded and oversaw Rothenberg Ventures Management Company ("RVMC"), an investment advisory firm that managed certain venture capital funds, including Rothenberg Ventures 2015 Fund, LLC (the "2015 Fund"). ECF No. 1 at 2.

On August 20, 2018, Rothenberg, RVMC, and the Rothenberg Ventures 2016 Accredited Fund LP (the "2016 Fund") filed this complaint against Silicon Valley Bank ("SVB") in the Superior Court of California. *Id*. The complaint alleged that contrary to his instructions to SVB to place $4.25 million that would serve as collateral for a loan for RVMC into an account owned by the 2015 Fund, SVB transferred those funds into an account owned by RVMC, creating the false appearance that Rothenberg had embezzled money from the 2015 Fund. *Id*.

SVB filed a cross-complaint alleging that Rothenberg had misrepresented the nature of the

$4.25 million cash collateral, falsely stating that it was composed of pre-paid management fees from the 2015 Fund which RVMC was entitled to receive, causing SVB to erroneously approve the RVMC loan. ECF No. 33-1 ¶¶ 35, 42, 37, 46. SVB alleged damages because Rothenberg's conduct delayed its recovery of the full amount due under that loan agreement. *Id*. ¶¶ 39, 48. The cross-complaint also sought equitable indemnity from Rothenberg for SVB's settlement with RVMC, the 2015 Fund, and 2016 Fund for their respective claims against SVB in this action. *Id*. ¶¶ 49–52.

Although Rothenberg was initially represented, his counsel were relieved and he has proceeded pro se since December of 2021. ECF No. 1-23 at 87.

On March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed the Federal Deposit Insurance Corporation as receiver ("FDIC-R"). ECF No. 1 at 3. FDIC-R filed a notice of substitution for SVB, taking its place in this action on March 23, 2023. *Id*. Soon after, FDIC-R filed a notice of removal in this Court on April 4, 2023. *Id*. at 4.

Before the Court is Rothenberg's extensive conduct delaying and obstructing this case. In January 2021, SVB served form interrogatories, special interrogatories, and document requests on Rothenberg, through his then-counsel. ECF No. 70-1 ¶ 2. Rothenberg failed to respond to certain requests and served evasive, incomplete, and unverified responses to others. *Id*. ¶ 3. After SVB's unsuccessful attempt to resolve the issue through many requests to meet and confer, it filed a motion to compel in February 2022, to which Rothenberg did not respond. *Id*. ¶¶ 4–5; ECF Nos. 71-1, 71-2.[1] On January 12, 2023, the state court granted SVB's motion to compel and ordered Rothenberg to serve within ten days proper responses to the three sets of discovery requests. ECF No. 70-1 ¶ 6; ECF No. 71-5. Upon prompting by SVB's counsel, Rothenberg stated that he would "absolutely not" provide responses by the deadline. ECF No. 70-1 ¶ 8. To date, he still has not filed those discovery responses. *Id*. ¶ 7.

---

[1] FDIC-R's unopposed request for judicial notice in support of its motion for terminating sanctions, ECF No. 71, is granted. Court filings and records are properly subject to judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Rothenberg's deposition was likewise marked by obstruction and defiance. After he failed to attend an initial, properly noticed deposition date of February 21, 2022, SVB filed and the court granted a motion to compel his attendance. *Id*. ¶¶ 9, 10; ECF Nos. 71-3–71-5. Rothenberg ultimately attended his deposition more than five months after it was originally scheduled, but still refused to answer some questions, provided non-responsive answers to others, and walked out of the deposition over SVB's objection after only an hour. ECF No. 70-1 ¶ 11. Upon SVB's motion, the state court ordered Rothenberg to attend a continued session of his deposition. *Id*. ¶ 12; ECF No. 71-6. At that session, Rothenberg continued to fail to respond to questions, asserted meritless objections, and "used the deposition as a self-serving opportunity to put into the record entirely non-responsive screeds." ECF No. 70-1 ¶ 13. At that point, SVB moved for terminating sanctions in the state court based on the missing discovery responses, but the matter was removed before the state court had the opportunity to rule. *Id*. ¶¶ 14–15; ECF No. 71-7.

On May 1, 2023, shortly after removal and reassignment to the undersigned, this Court ordered the parties to file a joint case management statement by August 8, 2023, setting the initial case management conference for August 15. ECF No. 17. FDIC-R twice attempted to schedule a meet-and-confer with Rothenberg, but he neither responded nor submitted a separate case management statement. ECF No. 70-1 ¶¶ 17–18. The initial case management conference triggered an August 8, 2023 deadline for the parties to exchange their initial disclosures under Rule 26(a)(1), which FDIC-R met but Rothenberg did not. ECF No. 3 at 2; ECF No. 17; ECF No. 70-1 ¶¶ 19–20.

On September 7, 2023, FDIC-R moved to dismiss Rothenberg's complaint for lack of subject-matter jurisdiction because Rothenberg did not timely exhaust a mandatory administrative claims process. ECF No. 70-1 ¶ 21; ECF No. 23. *After* the deadline to file an opposition passed, Rothenberg requested an extension of time, which this Court granted over FDIC-R's objection. ECF No. 70-1 ¶ 24; ECF No. 26. Despite the 90-day extension, Rothenberg never filed an opposition. ECF No. 70-1 ¶ 25. The Court then ordered Rothenberg to show cause why he did not file a timely opposition or statement of non-opposition, but he failed to respond. ECF No. 28; ECF No. 70-1 ¶ 27. On January 26, 2024, this Court dismissed Rothenberg's complaint for failure

3

1   to prosecute, leaving only FDIC-R's counterclaims.  ECF No. 32.

2         The Court held a further case management conference on January 30, 2024.  ECF No. 70-1
3   ¶ 29.  At that conference, the Court ordered Mr. Rothenberg to comply with his Rule 26(a)(1)
4   initial disclosure obligations by March 1, 2024.  *Id.*; ECF No. 31.

5         FDIC-R filed this motion on January 15, 2026.  ECF No. 70.  At 11:27 p.m. on the day his
6   opposition was due, Rothenberg emailed FDIC-R's counsel to arrange a meet-and-confer on his
7   request for an extension to file his opposition.  ECF No. 74 at 2.  Two minutes later, he filed a
8   motion to extend time to file his opposition, which did not comply with the applicable local rules.
9   *Id.*; ECF No. 73.  Because FDIC-R ultimately did not oppose Rothenberg's extension request, the
10  Court granted it.  ECF No. 75.

11        Rothenberg finally provided his initial disclosures on February 11, 2026—almost a month
12  after this sanctions motion was filed and one day before the extended deadline to file his
13  opposition.  ECF No. 76 at 6.  He filed his opposition on February 12, ECF No. 76, and FDIC-R
14  replied on February 19, ECF No. 77.  The Court held a hearing on the motion on March 5, 2026.

15  **II.   JURISDICTION**

16        The Court has jurisdiction under 28 U.S.C. § 1331.

17  **III.  LEGAL STANDARD**

18        District courts have broad discretion to impose sanctions for parties' failure to comply with
19  discovery obligations or court orders.  Federal Rule of Civil Procedure 37(b)(2)(A) provides that if
20  a party "fails to obey an order to provide or permit discovery," the court may "issue further just
21  orders" including (i) directing that certain designated facts be taken as established for the purposes
22  of the action, (ii) prohibiting the introduction of certain evidence, (iii) striking pleadings, (iv)
23  dismissing the action in whole or in part, (vi) rendering a default judgment, or (vii) treating the
24  failure as contempt of court.  Rule 37(c)(1) additionally provides that if a party "fails to provide
25  information . . . as required by Rule 26(a) or (e)," the court may (A) order payment of reasonable
26  expenses caused by the failure, (B) inform the jury of the failure, and (C) impose other appropriate
27  sanctions, including any of those listed in Rule 37(b)(2)(A)(i)–(vi).  Finally, the Court may impose
28  sanctions for bad-faith litigation conduct under its inherent authority.  *See Chambers v. NASCO,*

4

*Inc.*, 501 U.S. 32, 35 (1991); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (holding that the federal courts have inherent power to levy sanctions for "willful disobedience of a court order" or when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 776 (1980)).

Courts in this circuit must consider five factors before imposing a terminating sanction under Rule 37 or their inherent authority. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 n.4 (9th Cir. 2006). These factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). In addition, for a terminating sanction to be proper, "the conduct to be sanctioned must be due to 'willfulness, fault, or bad faith.'" *Id.* (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)). And "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Id.* (quoting *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 591 (9th Cir. 1983)).

When an action is removed from state court, all prior discovery orders remain operative. 28 U.S.C. § 1450 provides that "[a]ll injunctions, orders, and other proceedings had in such [state court] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." A federal court "takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963).

Rothenberg nonetheless argues, in as few words, that "[a] state court order does not justify federal default," and "terminating sanctions must be justified by the present federal posture." ECF No. 76 at 5. In one narrow sense, he is correct: Rule 37 may not be used to sanction conduct occurring entirely before the state court prior to removal because the federal rules did not yet govern the case. *See Butner*, 324 F.2d at 785 ("The federal rules apply after removal and neither add to nor abrogate what has been done in the state court prior to removal." (quotation omitted));

5

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 3:12-CV-0911-H WMC, 2014 WL 1871645, at *2 (S.D. Cal. May 8, 2014) ("[T]he Court lacks the power to sanction [under the Federal Rules of Civil Procedure] conduct that occurs in a different forum in a different case." (citing *Trulis v. Barton,* 107 F.3d 685, 694 (9th Cir. 1995)); *cf. Strike 3 Holdings, LLC v. Doe*, No. 4:19-CV-08231-KAW, 2020 WL 1942471, at *3 (N.D. Cal. Apr. 22, 2020) ("Dismissals under Rule 41(b)" are "surely not" meant to address conduct "in state court actions given that the federal rules do not apply to state court proceedings.").

      The problem for Rothenberg is that the state court's order that he provide three sets of discovery responses remained unfulfilled and operative when the case was removed. Rothenberg continues to violate that order to date, spanning almost three years of litigation properly subject to the Federal Rules and sanctionable under Rule 37. The misconduct related to his deposition, however, occurred entirely before the state court, so the Court may not impose Rule 37 sanctions to address it.[2] However, that misconduct is still part of the record before the Court, and is relevant in determining the effectiveness of lesser sanctions or identifying willfulness or bad faith.

## IV.    DISCUSSION

### A.    The Public's Interest in Expeditious Resolution of Litigation

"[T]he public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action' [and the] [o]rderly and expeditious resolution of disputes is of great importance to the rule of law." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting Fed. R. Civ. P. 1). Because termination of certain claims

---

[2] Federal courts may sanction conduct before the state court under their inherent authority or under the state rules that governed the state court conduct. *See W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992), *as amended* (June 23, 1992) (holding that the district court permissibly sanctioned a party under its inherent authority for conduct that occurred in Guam court); *Huling v. City of Los Banos*, No. 1:12-CV-01980-LJO, 2013 WL 310405, at *2 (E.D. Cal. Jan. 25, 2013) ("[I]n order to prevent a party from escaping sanctions for its improper conduct—as defined by state law—while in state court, upon removal of the case, a federal court may impose sanctions under [state law]." (quoting *Griffen v. City of Oklahoma City,* 3 F.3d 336, 341 (10th Cir. 1993)); *see also Chambers*, 501 U.S. at 57 ("As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom."). FDIC-R, however, does not request sanctions under either authority. ECF No. 70 at 11–12.

naturally speeds resolution of the litigation, "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

Rothenberg's conduct tilts this factor even more strongly in FDIC-R's favor. In refusing to comply with discovery requests, respond to FDIC's motion to dismiss and the Court's subsequent order to show cause, file a case management statement, and timely respond to motions, including this one, he has taken repeated actions to delay the resolution of litigation, to the detriment of the public interest. In part because of this conduct, the case reached its seventh year before Rothenberg had even served his Rule 26 initial disclosures. In addressing this factor, Rothenberg argues only that default would "generate further proceedings and collateral litigation." ECF No. 76 at 4. It is unclear what he means, because he gives no examples. What *is* clear, however, is that any necessary post-default proceedings, including those to determine damages, will consume less time than allowing the litigation to continue in the face of Rothenberg's delay and obfuscation.

This factor strongly supports FDIC-R's motion for terminating sanctions.

### B. The Court's Need to Manage Its Docket

The Court's need to manage its docket likewise strongly favors terminating sanctions. The Ninth Circuit recognizes the need to "'preserve the district courts' power to manage their dockets' without being subject to endless non-compliance with case management orders." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227 (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992)). "The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Here, Mr. Rothenberg's repeated refusal to comply with basic discovery obligations and meet litigation deadlines diverts judicial resources away from the merits of the case. "The Court is not required to tolerate a pattern that makes progress impossible absent its constant intervention." ECF No. 70 at 15. This factor clearly supports terminating sanctions. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Where a court order is violated, the first two factors support sanctions . . . .").

7

**C.  The Risk of Prejudice to the Party Seeking Sanctions**

"To prove prejudice, a [party] must establish that [the counterparty's] actions impaired [the party's] ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). In *Pagtalunan*, the Ninth Circuit observed that "[l]imited delays and the prejudice to a [party] from the pendency of a lawsuit" are not typically enough to establish prejudice, but "'unreasonable' delays" may suffice. 291 F.3d at 642. This is because "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Id*. at 643. In evaluating whether a particular delay is unreasonable, the Ninth Circuit considers the explanation provided by the party facing sanctions for its conduct. *Id*. at 642–43. Because Pagtalunan "offered no clear explanations of what actions he actually took during the relevant time periods," and his explanation for the delay was illogical, the court found prejudice had been established. *Id*.; *see Yourish*, 191 F.3d at 991–92 (noting that "[w]hether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse for the default," and finding prejudice "strongly support[ed] dismissal" where plaintiff offered a "paltry excuse"); *see also In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227 ("The law . . . presumes prejudice from unreasonable delay." (quoting *In re Eisen*, 31 F.3d 1447, 1452–53 (9th Cir. 1994)).

Here, Rothenberg attempts to explain his noncompliance as a result of "procedural uncertainty" related to his parallel criminal proceeding, ECF No. 76 at 3, or "neglect," *id*. at 5. "Neglect" is no excuse at all, and Rothenberg in any case does not attempt to explain how or why such "neglect" occurred. Rothenberg also does not explain why he believed the pendency of his criminal proceedings altered his discovery obligations, especially given that he never sought nor received a stay and none was ever entered. In fact, in July 2023, the Court *denied* the FDIC-R's motion for a 90-day stay under 12 U.S.C. § 1812(d)(12)(A). ECF No. 18. Moreover, the Court's January 30, 2024 order explicitly directed Rothenberg to produce initial disclosures and he still failed to do so. Finally, as the Court explains further below, the wide scope of Rothenberg's misconduct is consistent with a pattern of willful defiance, not mistake or neglect.

In addition, "[f]ailing to produce documents as ordered is considered sufficient prejudice"

8

and "late tender is no excuse." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227 (citing *Adriana,* 913 F.2d at 1412). Rothenberg's conduct has not only delayed resolution of the case overall, but has specifically denied FDIC-R the opportunity to prepare its position based on information to which it is entitled, including the contents of the three discovery responses ordered by the state court in 2021 and the Rule 26(a) initial disclosures. This misconduct "deprives the FDIC-R of necessary and foundational discovery required at the outset of every case, including witness identities, document categories and locations, and a basic roadmap of the relevant evidence" and "has forced the FDIC-R to litigate without the basic disclosures and discovery necessary to properly prosecute its crossclaims against Mr. Rothenberg." ECF No. 70 at 15. As to the state court discovery order, Rothenberg *still* has not produced responsive material, rendering the prejudice caused by that failure completely unmitigated.

      Rothenberg cites two cases purporting to hold that terminating sanctions are improper where the underlying deficiency has been cured. ECF No. 76 at 3. But as FDIC-R points out, the cases he cites in fact hold the opposite. *See Henry*, 983 F.2d at 947 ("squarely reject[ing]" the plaintiff's argument that his failure to schedule his deposition was "purged" when he eventually submitted to it because "'last minute tender' of discovery does not cure effects of discovery misconduct" (quoting *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647–48 (9th Cir. 1978)); *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." (quoting *North Am. Watch Corp. v. Princess Ermine Jewels*, 748 F.2d 1447, 1451 (9th Cir. 1986)). As the Court explained above, Rothenberg's repeated, significant discovery delays prejudiced FDIC-R notwithstanding his eventual production of his initial disclosures. *See Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1054, 1057–58 (9th Cir. 1998) (affirming terminating sanctions where discovery was produced "on the eve" of a sanctions hearing after years of disobedience). Finally, it bears reemphasizing that the discovery responses ordered by the state court have never been produced.

      For the reasons outlined above, the Court finds that FDIC-R have established prejudice

weighing in favor of a terminating sanction against Rothenberg.

### D. Public Policy Favoring Disposition on the Merits

Just as the public's interest in an expeditious termination to the litigation and the court's docket management typically weigh in favor of a default judgment sanction, the public policy favoring disposition on the merits typically weighs against it. *Adriana*, 913 F.2d at 1412. That is true here, although the Ninth Circuit has cautioned that this factor, "standing alone, 'is not sufficient to outweigh the other four factors.'" *Leon*, 464 F.3d at 961 (quoting *Malone*, 833 F.3d at 133 n.2).

### E. Availability of Less Drastic Sanctions

A district court commits reversible error when it imposes a terminating sanction without considering the "impact of the sanction and the adequacy of less drastic sanctions." *Malone*, 833 F.2d at 131. Less drastic sanctions would not address Rothenberg's misconduct. As the Court set forth above, Rothenberg has chosen not to comply with the rules governing litigation despite repeated reminders, second chances, and court orders to do so. His intransigence across multiple areas (discovery responses, deposition, initial disclosures, the case management statement, the order to show cause, the briefing on this motion), persistent in the face of multiple explicit orders from this Court and the state court, strongly suggest that lesser sanctions would be fruitless.

Rothenberg argues that he should be given a warning that a terminating sanction could result should his conduct continue, ECF No. 76 at 2, 4, but such a warning is not required and would not be effective given Rothenberg's extensive history of noncompliance. *See Malone*, 833 F.2d at 133 ("[W]e find a warning to be unnecessary here. A plaintiff can hardly be surprised by a harsh sanction in response to willful violation of a pretrial order."). Moreover, Rothenberg has been on notice of the possibility of terminating sanctions since SVB filed the first sanctions motion against Rothenberg in state court in 2023. ECF No. 70-1 ¶¶ 14–15; ECF No. 71-7. That motion was never resolved because the case was removed in the interim, and yet Rothenberg never provided the missing discovery responses engendering the motion in the first place. *Id*. Rothenberg is therefore in the unique position of having actually demonstrated to this Court that the mere *threat* of terminating sanctions will not suffice to deter him or prompt reformed behavior.

10

Rothenberg also argues that structured discovery orders would be sufficient to address his misconduct, but (1) he has repeatedly refused to comply with court orders in the course of this litigation and (2) the state court and this Court already provided structured discovery orders requiring him to produce specific discovery responses and initial disclosures by specific deadlines, which he overshot by several years.

As FDIC-R argues, monetary sanctions are unlikely to be effective because Rothenberg is likely judgment-proof and has a demonstrated inability to pay, including by seeking and receiving appointed counsel in a related criminal case. ECF No. 70-1 ¶ 35. Finally, no specific evidentiary sanctions are appropriate here because Rothenberg's omissions are too broad: any evidentiary sanction sufficient to cure the prejudice caused by his failure to provide the sets of discovery ordered by the state court and the initial disclosures required by this Court would be tantamount to a default judgment sanction. This is not a case wherein Rothenberg spoliated or withheld specific types of evidence redressable by an adverse inference instruction or similar relief.

Having considered the available lesser sanctions, this Court concludes that only a terminating sanction resulting in default judgment in favor of Counterclaimant FDIC-R suffices to address Rothenberg's misconduct.

### F. Willfulness, Fault, or Bad Faith

The Court must also assure itself that Rothenberg's conduct was willful or in bad faith. *Anheuser-Busch*, 69 F.3d at 348. As the Court outlined above, Rothenberg's history of refusing to comply with litigation rules and court orders extends from 2021 to the present. It transcends several motions to compel followed by several court orders finding Rothenberg delinquent and ordering him to comply with his obligations. At least two of those court orders remained outstanding as of the filing of this motion: the state court's January 2023 order that he provide the three sets of requested discovery responses, with which Rothenberg stated that he would "absolutely not" comply, ECF No. 70-1 ¶ 8, and this Court's January 2024 order that he serve initial disclosures by March 1, 2024, which he failed to serve until February 11, 2026, ECF No. 31; ECF No. 73. His discovery misconduct is also paired with the persistent failure to prosecute his case in a timely manner, making and receiving repeated extension requests, filed at the last

11

second without complying with this Court's local rules. *See, e.g.*, ECF No. 24; ECF No. 73. As the Court concluded above, this widespread misconduct, persisting despite many reminders from opposing counsel and court orders, belies any possibility of mere neglect and instead demonstrates willful defiance.

Rothenberg argues that no willfulness has been shown. Specifically, he suggests that his failure to provide the required discovery responses and disclosures is excused by the fact that "[n]o federal discovery order compelling Rule 26 disclosures was entered" during a yearlong period within which FDIC-R sought continuances pending Rothenberg's sentencing in a related criminal matter. ECF No. 76 at 2. This is both irrelevant and inaccurate. Rule 37(c)(1) does not require a court order before sanctions may be imposed for failing to provide Rule 26(a) disclosures. Fed. R. Civ. P. 37(c)(1). In any case, Rothenberg was subject to express court orders as to both discovery failures. The state court entered an order compelling discovery responses in January 2023. ECF No. 70-1 ¶ 6; ECF No. 71-5. This Court ordered service of the Rule 26(a) disclosures first by August 8, 2023, ECF No. 3 at 2; ECF No. 17, and again by March 1, 2024, ECF No. 31. The Court has otherwise already addressed Rothenberg's other arguments plausibly bearing on willfulness—that he cured the failure by belatedly serving Rule 26 disclosures, and that the delay was due to mere "procedural uncertainty."

In light of the significant evidence that Rothenberg's misconduct amounted to purposeful defiance, and the absence of any plausible explanation to the contrary, the Court finds the requirement that his conduct be "willful" or "in bad faith" is satisfied.

## CONCLUSION

Having concluded that four out of the five *Anheuser-Busch* factors are satisfied, as well as the additional requirement that the conduct be willful or in bad faith, the Court imposes a terminating sanction upon Rothenberg. *See Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) ("We may affirm a dismissal where at least four factors support dismissal or where at least three factors "strongly" support dismissal." (citations omitted)); *see also G-K Props.*, 577 F.2d 645, 647 (9th Cir. 1978) ("We encourage [orders granting terminating sanctions]. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and

cause impermissible prejudice to their opponents."). Rothenberg's answer to the FDIC-R's cross-complaint, which was filed on April 9, 2021, is stricken. Default judgment is entered against Rothenberg on the FDIC-R's cross-complaint, which was filed on March 8, 2021.[3]

Although Rothenberg appears pro se, he is unusually sophisticated. His litigation conduct in this case has consisted almost entirely of ignoring or frustrating his obligations to the Court and his opponent. His conduct leaves no doubt in the Court's mind that it was purposeful and deliberate. As long as this litigation is allowed to proceed, Rothenberg's obstructive tactics will continue. Accordingly, it must come to an end.

For the foregoing reasons, FDIC-R's motion for terminating sanctions is granted.

**IT IS SO ORDERED.**

Dated: March 5, 2026

JON S. TIGAR
United States District Judge

---

[3] Rothenberg argues that a terminating sanction is inappropriate because the claimed damages are disputed. Courts routinely impose terminating sanctions establishing liability by default and then determine damages through the subsequent default-judgment process. *See, e.g.*, *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1168–69 (9th Cir. 2012) (affirming sanction striking answer and entering default judgment while determining damages in a subsequent proceeding).